TUNLEY *v.* BEALL.

1. CONTRACTS—MERGER OF ORAL AGREEMENTS INTO WRITING.
   Where parties have reduced their agreements to writing, all preliminary verbal agreements are merged therein and the writing is the sole evidence of the contract between the parties.

2. SAME—WRITING AS EVIDENCE OF PART OF AGREEMENT.
   Writings between the parties are not the sole evidence of the agreement between the parties when those writings are entered into in pursuance and execution of the agreement and evidence only a part of the agreement.

REFERENCES FOR POINTS IN HEADNOTES
[2] 12 Am. Jur., Contracts, § 242.
[2] Parol evidence rule: Tests for determining whether entire agreement is embodied in the writing (rule of integration). 70 A.L.R. 752.
[4, 5] 1 Am. Jur., Accord and Satisfaction, § 39.

3. SAME—SALE OF CORPORATE STOCK—PARTIAL WRITTEN AGREEMENT
—ORAL EVIDENCE AS TO PRICE.

Where there is competent evidence to sustain trial court's finding
that written memorandum as to sale of corporate stock was
only a part of the agreement and price at which sale was
to be made was not mentioned therein, admission of oral tes-
timony to show that stock was not to be sold for less than a
stated amount per share did not necessarily vary the terms
of the written memorandum.

4. PAYMENT—LIQUIDATED SUM—PARTIAL PAYMENT.

A payment of less than the full amount of a liquidated debt,
although accepted and receipted for as in full satisfaction,
is only a payment *pro tanto*, and does not estop the creditor
from suing for and recovering the balance.

5. CONTRACTS—ACCEPTANCE OF PARTIAL PAYMENT—LIQUIDATED SUM
—ACCORD AND SATISFACTION.

Where defendant's written agreement was to turn over all
moneys over $3,000, plus 6 per cent. interest, received for 347
shares of designated stock and orally agreed to sell the stock
for not less than $20 a share, plaintiff's acceptance of $215
after sale of the stock at $10 a share was merely a payment
*pro tanto*, hence doctrine of accord and satisfaction did not
apply.

Appeal from Wayne; Jayne (Ira W.), J. Sub-
mitted October 5, 1948. (Docket No. 21, Calendar
No. 43,927.) Decided November 12, 1948.

Assumpsit by Grace Tunley against George H.
Beall for sales price of stock sold by defendant for
plaintiff. Judgment for plaintiff. Defendant ap-
peals. Affirmed.

*Frederick J. Plotts* (*William Kruszynski,* of
counsel), for plaintiff.

*Smith & Huffaker* (*Carroll C. Grigsby,* of coun-
sel), for defendant.

Sharpe, J. This is an action at law involving a part of the proceeds of the sale of 347 shares of stock of the M.P.E. Manufacturing Company.

Robert Fleming, the late husband of plaintiff, was an officer of the M.P.E. Manufacturing Company and defendant, George H. Beall, was a friend of Mr. and Mrs. Fleming for many years. In order to enable Mr. Fleming to acquire a stock interest in the company, the defendant on February 14, 1944, loaned Fleming $3,000 on his personal note. With the money borrowed from the defendant, Fleming purchased 150 shares of stock in the company. The stock was issued to Fleming and about a year later was transferred to Mr. and Mrs. Fleming. An additional 197 shares of stock was purchased in the joint names of Mr. and Mrs. Fleming and paid for from the earnings of Mrs. Fleming.

Mr. Fleming died June 21, 1945, without having made a payment on the note held by defendant. After the death of Mr. Fleming, Mrs. Fleming, now Mrs. Tunley and plaintiff in this action, had several conversations with defendant relative to the payment of the indebtedness or liquidation of the stock. In April, 1946, plaintiff and defendant had a further conversation relative to the payment of the indebtedness resulting in the following agreement:

"I, G. H. Beall, do swear to turn over all moneys above $3,000, plus 6 per cent. interest, received for 347 shares of MPE Manfg. Co. stock.
"G. H. Beall (signed):
                    Witness: Grace G. White."

It appears that at the time the above agreement was entered into the company had only five stockholders, had never paid a dividend and about six months previous had entered into a composition with creditors by paying them 10 per cent. of their claims. The value of the stock was uncertain.

In July, 1946, defendant sold the 347 shares of stock to the company for $3,470 or at the rate of $10 per share and a short time later forwarded to plaintiff a statement of such sale together with check in the amount of $215 which plaintiff cashed. It also appears that shortly after this sale was consummated one Gayle B. Knapp resigned as president of the company and at the same time sold his stock to the company for $25 per share.

In October, 1946, plaintiff brought the instant action against defendant in which the claim is made that it was verbally agreed between plaintiff and defendant that the stock was not to be sold for less than $20 per share.

The cause was tried without a jury. The trial court granted plaintiff a judgment in the sum of $3,255 plus interest at 5 per cent. from August 1, 1946. In an opinion filed, the court stated:

"It is obvious that this is not a contract in writing complete in itself. While oral testimony of course may not be used to alter the terms of a written agreement, it may and must be used if necessary to supplement and complete any partial memorandum. It is undisputed that up to that moment the defendant had no right or lien whatever in the stock and that the large proportion of it had been purchased by the plaintiff and paid for from her separate earnings. The plaintiff was under no legal obligation to pay her deceased husband's note though she could bind herself to do so. It appears that the plaintiff has sustained the burden of proof in her contention that she insisted that the stock should not be sold for less than $20 a share.

"It must be borne in mind that taking into consideration the claim for refund from the government, which was active, listed as an asset and eventually paid in full, that the stock was actually worth more than $20 a share. The defendant, relying on his business experience to prepare the above-mentioned

memorandum, by the exercise of ordinary diligence should have appraised the potential value of this government claim. The conclusion is inescapable that he did not exercise the same diligence in securing the return of the money of the widow of his deceased friend as he did in securing his own."

Defendant appeals and urges that the written memorandum signed by defendant and accepted by plaintiff was equally binding upon both parties and was complete in itself; that plaintiff's claim as set forth in her declaration should be denied as it is materially different from the agreement set forth in the written memorandum; and that plaintiff's claim has been discharged by an accord and satisfaction.

In *Labadie* v. *Boehle,* 288 Mich. 223, we reiterated a well-established rule when we said:

"It is the law of the State undoubtedly that where parties have reduced their agreements to writing that all preliminary verbal agreements are merged therein and the writing is the sole evidence of the contract between the parties. It also is the law of the State that writings between the parties are not the sole evidence of the agreement between the parties when those writings are entered into in pursuance and exeution of the agreement and evidence only a part of the agreement."

The trial court found as a fact that the written memorandum did not constitute the entire contract between the parties and permitted the introduction of oral testimony to ascertain the entire contract between the parties. Such evidence was not admissible to vary the terms of the written instrument, but was admissible to show that the writing between the parties was only a part of the agreement. In the case at bar the written memorandum does not mention the price at which the stock was to be sold. The admission of oral testimony to show that the stock was not to be sold for less than $20 per share did not

necessarily vary the terms of the written memorandum. There is competent evidence to sustain the finding of the trial court that the written memorandum was only a part of the agreement.

It is also urged that plaintiff's claim has been discharged by an accord and satisfaction. There is evidence that prior to the receipt of $215 by plaintiff, she called defendant on the telephone and during this telephone conversation plaintiff refused to accept the check as the total amount of money due her for the reason that the stock was to be sold for not less than $20 per share. In allowing a judgment for plaintiff, the court accepted her version of the conversation and found as a fact that plaintiff was entitled to $20 per share for all stock sold less the amount owing defendant on the promissory note. It follows that the amount due plaintiff was a liquidated sum.

In *Cunningham* v. *Irwin,* 182 Mich. 629, we announced the following rule:

"The rule of law is generally recognized as well settled by the great weight of authority that a payment of less than the full amount of a. * * * liquidated * * * debt, although accepted and receipted for as in full satisfaction, is only to be treated as a payment *pro tanto,* and does not estop the creditor from suing for and recovering the balance."

See, also, *Aston* v. *Elkow,* 279 Mich. 232; *Goldsmith* v. *Lichtenberg,* 139 Mich. 163.

In the case at bar the receipt of the check for $215 was not in settlement of an unliquidated amount, but was an acceptance of a part of the indebtedness owing to plaintiff, consequently the doctrine of accord and satisfaction as contended for by defendant has no application.

The judgment of the circuit court is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.